UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LYNN M. JONES,

                        Plaintiff,

v.                                                        5:14-CV-1064 (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON        STEVEN R. DOLSON, ESQ.
  Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.             HEETANO SHAMSOONDAR, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Lynn M. Jones ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 10, 15.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on June 21, 1962. Plaintiff has a GED, and has worked as a collator, a food processor, and a janitor. Generally, Plaintiff's alleged disability consists of carpal tunnel syndrome, arthritis, depression, high blood pressure, high cholesterol, diabetes, and diabetic neuropathy. Plaintiff's alleged disability onset date is March 19, 2009.

### B. Procedural History

On May 31, 2011, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income. Plaintiff's application was initially denied on October 31, 2011, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). On November 26, 2012, Plaintiff appeared in a hearing before the ALJ, Elizabeth W. Koennecke. (T. 27-42.) On December 17, 2012, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 9-26.) On July 14, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 15-23.) First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2013, and has not engaged in substantial gainful activity since March 19, 2009, the alleged onset date. (T. 15.) Second, the ALJ found that Plaintiff has the following severe impairments: degenerative joint disease of the right wrist, osteoarthritis of the right foot, and insulin dependent diabetes mellitus with neuropathy. (T. 15-18.) The ALJ found that Plaintiff's following impairments were not severe: left wrist disorder, lower back pain, hypertension, hypercholesterolemia, depression, and right ankle pain. (*Id.*) Third, the ALJ

2

found that Plaintiff's severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T. 18.) The ALJ considered Listings 1.02A, 1.02B, and 9.00. (*Id.*) Fourth, the ALJ found that Plaintiff

> has the residual functional capacity ["RFC"] to lift and/or carry 20 pounds occasionally and ten pounds frequently, stand and/or walk for six hours in [an] eight-hour workday, and sit for six hours in an eight-hour workday, which is consistent with the ability to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)

(T. 18-21.) Fifth, the ALJ found that Plaintiff has no past relevant work. (T. 21.) Sixth, and finally, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 22.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff advances one argument in support of her motion for judgment on the pleadings. Plaintiff argues that the ALJ committed reversible error by failing to properly assess Plaintiff's nonexertional impairments in her RFC analysis. (Dkt. No. 10, at 1-9 [Pl.'s Mem. of Law].) Within this argument, Plaintiff argues that the ALJ failed to determine that Plaintiff's arthritis in her back and right shoulder, and depression were severe impairments at step two. (*Id.* at 6-9.)

Defendant advances two arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ's step two finding was supported by substantial evidence. (Dkt. No. 15, at 4-5 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ's RFC finding was supported by substantial evidence. (*Id.* at 6-11.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906

F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

5

## III. ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized below.

### A. Whether the ALJ's Step Two Finding was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15, at 4-5 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

According to Social Security Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). The regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," with examples including the following: (1) physical functions such as walking, standing, lifting, pushing, pulling, carrying or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). Accordingly, the severity of an impairment is determined by the limitations imposed by the impairment, and not merely by diagnosis of the impairment. *Ellis v. Comm'r,* 11-CV-1205, 2012 WL 5464632, at *4 (N.D.N.Y. Sept. 7, 2012) (citing *Coleman v. Shalala,* 895 F. Supp 50, 53 [S.D.N.Y. 1995]); *see also McConnell v. Astrue,* 03-CV-0521, 2008 WL 833968 (N.D.N.Y. Mar. 27, 2008).

"The second step requirement under the prescribed disability analysis is truly *de minimis*, and intended only to screen out the truly weakest of cases." *Davis v. Colvin*, 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 [2d

Cir. 1995]). When an ALJ finds that one or more of a plaintiff's impairments are severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the five-step analysis and did not deny the claim based on lack of a severe impairment alone. *Ellis,* 2012 WL 5464632, at *5; *Tyron v. Astrue*, 10-CV-0537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012); *Kemp v. Comm'r*, 10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011).

Moreover, when "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010); *see also* 20 C.F.R. §§ 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [a plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

Plaintiff argues that the ALJ failed to find that Plaintiff's depression, and arthritis in her back and right shoulder were severe impairments at step two, and failed to discuss Plaintiff's right shoulder impairment entirely. (Dkt. No. 10, at 6-9 [Pl.'s Mem. of Law].) However, a review of the entire decision indicates that the ALJ's step two finding was supported by substantial evidence and that the ALJ properly considered the effects of Plaintiff's combined impairments in the remainder of the sequential analysis.

    **i.**    **Depression**

The ALJ found that, "though the claimant reported that she has depression, the evidence in [the] record does not show that her psychological symptoms result in a more than mild limitation of function." (T. 16.) The ALJ noted that, in March 2012, examining physician, Richard Mutty, M.D., described Plaintiff as alert, pleasant and cooperative. (*Id.*) The ALJ further noted that, in September 2012, treating physician Harpreet Kaur, M.D., indicated that Plaintiff reported feeling depressed, but also reported that she had stopped taking her

antidepressants, and observed that Plaintiff's mood and affect were normal. (*Id.*) Finally, the ALJ noted that, while Plaintiff alleged disability in part due to depression, she refused a referral to see a psychologist in September 2012. (T. 431.)

Moreover, during the hearing, Plaintiff's counsel indicated that there were outstanding mental health records for one or two visits Plaintiff had with Dr. Zebrowski of CNY Services several years prior. (T. 30.) However, Plaintiff's counsel stated that the there was no reason to "hold up the record" for Plaintiff's mental health records from CNY Services because the basis of Plaintiff's claim was "primarily physical." (*Id.*) Accordingly, the ALJ determined that, despite her complaints of ongoing depressive symptoms, Plaintiff failed to establish a severe psychological disorder. (T. 20.)

### ii. Back Pain

The ALJ noted that Plaintiff complained of lower back pain, but indicated that she had taken only nonprescription medication for her symptoms and had not pursued any formal treatment for back pain. (T. 16.) The ALJ noted that, in November 2010, an x-ray examination of Plaintiff's lumbar spine showed only mild arthritic changes and, in August 2011, an x-ray examination of Plaintiff's lumbosacral spine showed no significant bony abnormality. (*Id.*) The ALJ further noted that, though Dr. Ganesh noted that Plaintiff's lumbar spine exhibited decreased range of motion, there were no other positive findings associated with this condition. (*Id.*) The ALJ concluded that, "taking into account the mild findings identified in diagnostic images of her lumbar spine, coupled with lack of treatment for her back pain," Plaintiff failed to establish a severe back disorder. (*Id.*)

### iii. Shoulder Impairment

As an initial matter, the Court notes that Plaintiff did not allege disability due to a shoulder impairment. (T. 155.) Additionally, Plaintiff and her counsel discussed her impairments and limitations during the administrative hearing, but failed to raise the issue of a shoulder impairment. (T. 31-41.)

The ALJ noted that Dr. Loftus's assessments indicated that Plaintiff's initial physical limitations following her carpal tunnel release surgeries in 2009 were temporary, and that she regained use of her right non-dominant upper extremity such that she could perform light work activity by 2011. (T. 19.) Moreover, on August 26, 2011, Dr. Ganesh examined Plaintiff and observed that she had full range of motion of her shoulders and full strength in her upper extremities, and that her joints were stable and nontender with no redness, heat, swelling, or effusion. (T. 347-50.) Accordingly, the ALJ's assessment of Plaintiff's upper extremity impairment was supported by substantial evidence, and any error in not finding a shoulder impairment severe at step two is harmless.

Notably, the ALJ found that Plaintiff's degenerative joint disease of the right wrist, osteoarthritis of the right foot, and insulin dependent diabetes mellitus with neuropathy are severe impairments, and therefore the ALJ did not deny benefits based on lack of a severe impairment. (T. 15-18.) Additionally, the ALJ properly considered the effects of Plaintiff's combined impairments in the remainder of her analysis and included limitations in the RFC for Plaintiff's combined impairments. (T. 15-21.) The ALJ expressly stated that, in determining Plaintiff's RFC, she must "consider all of the claimant's impairments, including impairments that are not severe." (T. 14.) Accordingly, even if the ALJ's failure to find additional impairments severe at step two of the sequential analysis is error, it is harmless. *Ellis*, 2012 WL

5464632, at *5; *Tyron,* 2012 WL 398952, at *3.

Therefore, remand is not necessary on this basis.

### B. Whether the ALJ's RFC Determination was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15, at 6-11 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider all of the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

It is the duty of the ALJ, not a medical source, to formulate a plaintiff's RFC. 20 C.F.R. §§ 404.1527, 416.945. In formulating a plaintiff's RFC, an ALJ does not have to strictly adhere

to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion). Further, an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony." *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (finding that the ALJ was not required to reconcile two apparently inconsistent medical opinions; it was sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision).

Moreover, an ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *see also Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."); *Cobb v. Comm'r*, 2014 WL 4437566, at *6 (N.D.N.Y. Sept. 9, 2014).

Here, the ALJ determined that Plaintiff has the RFC to lift/carry 20 pounds occasionally and ten pounds frequently, stand/walk for six hours, and sit for six hours in an eight-hour workday, which is consistent with the ability to perform the full range of light work. (T. 18.) The Court finds that the ALJ's physical RFC determination was supported by substantial

evidence, including the opinions of consultative examiner, Kalyani Ganesh, M.D., and treating orthopedic surgeon, John Loftus, M.D., as well Plaintiff's reported activities.

### i. Consultative Internal Examiner, Kalyani Ganesh, M.D.

On August 26, 2011, Dr. Ganesh diagnosed Plaintiff with a history of bilateral carpal tunnel release surgery, lower back pain, high blood pressure, diabetes, and diabetic neuropathy. (T. 349.) Dr. Ganesh opined that Plaintiff had no gross limitations in sitting, standing, or walking, and has a mild limitation in lifting, carrying, pushing, and pulling. (T. 19.) The ALJ assigned great weight to Dr. Ganesh's opinion based on her programmatic expertise. (*Id.*)

### ii. Treating Orthopedic Surgeon, Jon Loftus, M.D.

In June 2009, Dr. Loftus initially kept Plaintiff out of work following her carpal tunnel release surgery. (T. 19.) In August 2009, Dr. Loftus opined that Plaintiff could return to light duty work with no lifting greater than 15 pounds and no repetitive motion of her right upper extremity. (*Id.*) In September 2009, Dr. Loftus stated that, because Plaintiff's employer had no light duty work for her, he was going to keep her out of work. (T. 294.) In September 2010, Dr. Loftus noted that Plaintiff informed him that she did not think she could work yet and was going to remain out of work. (T. 284.)

In May 2011, Dr. Loftus noted that Plaintiff was not working due to her own circumstances, and not because he took her out of work. (T. 280-81.) In June, July, and September of 2011, Dr. Loftus opined that, though Plaintiff had a thirty percent impairment to the right wrist due to continued pain, Plaintiff could return to work with the restriction of no lifting more than 15 pounds with her right non-dominant extremity. (T. 278-79, 411.) In March 2012, Dr. Loftus noted that Plaintiff was attempting to work with limitations and no heavy lifting. (T. 19.)

The ALJ afforded significant weight to the opinion of Dr. Loftus, reasoning that he is a treating specialist who examined Plaintiff on a regular basis, and that his assessments show that Plaintiff initially experienced significant physical limitations following her wrist surgeries, but the limitations were temporary and she regained use of her right non-dominant upper extremity such that she could perform light work activity. (T. 19.) The ALJ further noted that Dr. Loftus's opinion accounts for Plaintiff's functional limitations associated with the arthritis and neuropathy in her lower extremities, as she must avoid lifting heavier objects while in the standing position. (*Id.*)

The ALJ's physical RFC finding is also supported by Plaintiff's reported activities. Occupational therapy records from July 2010 indicated that Plaintiff was performing heavy housework, holding her grandson, and washing pots and pans. (T. 21.) In Plaintiff's Function Report of August 1, 2001, she reported that she lived alone, cared for a pet, cooked, cleaned, visited her grandchildren, performed light housekeeping, and did laundry. (T. 192-93.) Plaintiff further reported that she went outside daily, walked outside, used public transportation, shopped in stores, and spoke with family members on the telephone every other day. (T. 195-97.) Plaintiff indicated that, while she had some difficulty using her right hand, her left hand "is fine." (T. 198.) Additionally, on August 26, 2011, Plaintiff reported to Dr. Shapiro and Dr. Ganesh that she showered, bathed, and dressed herself daily, cooked and cleaned three days a week, and did laundry and shopped every two weeks. (T. 344-45, 348.)

Turning to the mental portion of the RFC, the ALJ found that, "[a]lthough the claimant reported that she has depression, the evidence in [the] record does not show that her psychological symptoms result in a more than mild limitation of function." (T. 16.) The Court finds that the ALJ's mental RFC assessment was supported by substantial evidence, including the opinion of State agency psychological consultant, L. Meade, which identified no marked

13

mental limitations, and Plaintiff's reported activities. Moreover, the ALJ's assessment of the opinion from consultative psychological examiner, Jeanne Shapiro, Ph.D., was supported by substantial evidence.

### i. Consultative Psychological Examiner Jeanne Shapiro, Ph.D.

On August 26, 2011, Dr. Shapiro diagnosed Plaintiff with depressive disorder. (T. 345.) Dr. Shapiro opined that, vocationally, Plaintiff appeared to be capable of adequately understanding and following some instructions and directions as well as completing some tasks. (*Id.*) Dr. Shapiro opined that Plaintiff may have difficulty interacting appropriately with others due to social withdrawal, may have difficulty attending work and maintaining a schedule due to lack of motivation and lethargy, and does not appropriately manage stress. (*Id.*)

The ALJ afforded Dr. Shapiro's opinion limited weight, reasoning that it was contradicted by her own examination findings. (T. 17.) The ALJ noted that, while Dr. Shapiro indicated that Plaintiff has difficulties with social withdrawal, Dr. Shapiro noted that Plaintiff was cooperative with adequate social skills upon examination. (*Id.*) Additionally, Dr. Shapiro noted that Plaintiff's attention and concentration, and recent and remote memory skills were intact. (*Id.*)

### ii. State Agency Psychological Consultant, L. Meade

On October 27, 2011, Dr. Meade opined that Plaintiff was "not significantly limited" to "moderately limited" in understanding and memory, sustained concentration and persistence, and adaptation, and social interaction, and "markedly limited" in no areas. (T. 365-67.) As discussed above, an ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants and their opinions may constitute substantial evidence if they are consistent with the record as a whole. 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *see also Little*, 2015 WL 1399586, at *9.

14

Here, the ALJ cited other substantial evidence of record that was consistent with Dr. Meade's opinion. (T. 16-17.) For example, the ALJ noted that, in March 2012, Dr. Mutty described Plaintiff as alert, pleasant and cooperative. (T. 16.) The ALJ further noted that, in September 2012, Dr. Kaur indicated that Plaintiff reported feeling depressed, but had stopped taking her antidepressants, and observed that Plaintiff's mood and affect were normal. (*Id.*) The ALJ noted that Dr. Shapiro observed that Plaintiff was cooperative with adequate social skills, and that Plaintiff's attention and concentration, and recent and remote memory skills were intact. (T. 17.) Moreover, Plaintiff reported that she could follow written and spoken instructions, manage money, and had no problems getting along with family, friends, neighbors, authority figures, or others. (T. 197-99.)

For these reasons, the ALJ's RFC is supported by substantial evidence, and remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: May 4 , 2016
      Syracuse, New York

      Hon. Glenn T. Suddaby
      Chief U.S. District Judge